UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX BAUM,<br>　　　　Plaintiff,<br>　　v.<br>J-B WELD COMPANY, LLC,<br>　　　　Defendant. | Case No. 19-cv-01718-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br>Docket No. 43 |

## I.　　INTRODUCTION

Plaintiff Felix Baum ("Plaintiff") has filed a class action complaint against Defendant J-B Weld Company, LLC ("Defendant" or "J-B Weld"). Defendant manufactures a range of epoxy products, which it represents as being "Made in the U.S.A." Plaintiff brings claims under the Unfair Competition Law and Consumers Legal Remedies Act, alleging that Defendant's "Made in the U.S.A." representations are false and misleading because the products contain impermissible amounts of foreign-sourced content. Critically, the parties disagree as to whether the accused products' containers (specifically, the products' caps, tubes, and bottles, which in this case are foreign made) should be considered part of the "product" for the purpose of determining "Made in the U.S.A." eligibility.

## II.　　BACKGROUND

A.　　Factual Background

J-B Weld is "a leading manufacturer of cold weld products" that makes a wide range of sealants, adhesives, and other products. Second Amended Complaint ("SAC") at 1, Docket No. 38. It "is a Georgia company whose headquarters is . . . [in] East Hanover, NJ." *Id.* at 19. Felix

Baum is a California citizen who is domiciled in San Francisco and who has "purchased [J-B Weld's] Products at various stores in San Francisco, California." *Id.* at 18.

At issue in this lawsuit are representations that J-B Weld has made indicating that its products are "Made in U.S.A." *Id.* at 2–3. Plaintiff alleges that he "routinely was exposed to, saw, and relied upon Defendant's 'Made in U.S.A.' representations by reading the front and back of" various J-B Weld product labels. *Id.* at 18. Plaintiff notes that on the front of "each and every" product package the phrase "Made in U.S.A." appears directly below a picture of the American flag. *Id.* at 2–3. However, he contends that J-B Weld products "contain more than a 'de minimis, or negligible,' amount of foreign content" despite the fact that the company "prominently represents that [its] Products are Made in U.S.A." *Id.* at 13. Plaintiff states that had he "known the truth about Defendant's 'Made in U.S.A.' representations, he would not have purchased [Defendant's] Products." *Id.* at 18. As a result, Plaintiff claims to have "suffered injury in fact and lost money at the time of purchase." *Id.*

The California statute that governs "Made in U.S.A." origin claims is Section 17533.7 of the state's Business and Professions Code, which states:

> (a) It is unlawful for any person, firm, corporation, or association to sell or offer for sale in this state any merchandise on which merchandise or on its container there appears the words "Made in U.S.A.," "Made in America," "U.S.A.," or similar words if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.
>
> (b) This section shall not apply to merchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 5 percent of the final wholesale value of the manufactured product.

Cal. Bus. & Prof. Code § 17533.7.

Plaintiff has identified 24 of Defendant's products that he believes contain impermissible levels of foreign content. *Id.* at 1–2. More specifically, Plaintiff's contention is that the products' various casings and containers (*i.e.* their tubes, plastic bottles, and resealable caps) have either a foreign provenance or contain imported materials. *Id.* at 2. Because American consumers have a

2

1  "preference for American-made goods" and a "willingness to pay more for domestically made
2  products," Plaintiff believes that Defendant was able to charge more than the company would have
3  been able to in the absence of its "Made in U.S.A." messaging. *Id.* at 16. He contends that "all
4  consumers of Defendant's Products – whether they relied on the 'Made in U.S.A.' representations
5  or not – paid a premium for a U.S. origin benefit they did not receive." *Id.* at 17.

B. Procedural Background

Plaintiff filed this suit as a proposed class action on April 3, 2019. Class Action Complaint, Docket No. 1. He filed a First Amended Class Action Complaint on May 9, 2019. *See* Docket No. 19. Defendant subsequently filed a Motion to Dismiss the First Amended Class Action Complaint. *See* Docket No. 23. That motion challenged the adequacy of Plaintiff's pleadings under Rules 8 and 9(b) and sought dismissal of the complaint under Rule 12(b)(1) for lack of standing (because Plaintiff had only purchased four of the thirty-nine products identified in the complaint) and 12(b)(6) (contending that the law governing the use of "Made in U.S.A." labels does not concern packaging and/or containers in which products are sold).

The Court dismissed the First Amended Complaint with leave to amend. *See* Docket No. 34. The Minute Order stated: "Plaintiff must specially allege each product he contends exceeds the 5% limit and state whether that excess is based on the container/packaging being included as part of the product on which the over-5% allegation is based. As stated on the record, the Court intends the parties to tee up the issue of statutory interpretation discussed at the hearing." *Id.* Plaintiff filed a Second Amended Complaint, *see* Docket No. 38, and Defendant subsequently filed the Motion to Dismiss that is currently before the Court, *see* Docket No. 43 ("MTD").

A motion for class certification has not yet been filed. The only motion pending before the court is Defendant's Second Motion to Dismiss.

**III. DISCUSSION**

A. Legal Standard

The "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis removed). To avoid such a dismissal, "[A] plaintiff must demonstrate

standing for each claim he seeks to press and 'for each form of relief that is sought.'" *Id.* at 1068–69 (quoting *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2006)). More specifically, a plaintiff must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 816 (9th Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "For purposes of ruling on a motion to dismiss for want of standing . . . the [trial court] . . . must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya*, 658 F.3d at 1068 (internal quotations omitted). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000)).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard

4

is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). A court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

For claims involving allegations of fraud, the complaint must also satisfy "the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir.), *cert. denied*, 139 S. Ct. 640 (2018). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). More specifically, the complaint must allege "'the who, what, when, where, and how' of the fraud." *See TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1017 (N.D. Cal. 2012) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). These heightened requirements of Rule 9(b) are intended to "give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted) (citing *Bly–Magee v. California,* 236 F.3d 1014, 1019 (9th Cir.2001)).

Because a court "must dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction," Fed. R. Civ. P. 12(h)(3), Defendant's 12(b)(1) arguments are addressed before the request for relief under 12(b)(6). *See also Ctr. for Biological Diversity*, 868 F.3d at 815 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case.").

B. <u>Analysis</u>

    1. <u>Standing as to Unpurchased Products</u>

Defendant contends that Plaintiff lacks standing to seek relief with respect to 21 of the 24 accused products because Plaintiff "has admitted that he has only purchased three of the accused 24 J-B Weld Products." MTD at 13.

Within the Ninth Circuit, "[t]here is no controlling authority on whether Plaintiffs [in a class action] have standing for products they did not purchase." *Miller v. Ghirardelli Chocolate*

5

*Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012). However, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are *substantially similar*." *Id.* at 869 (emphasis added); *see also Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1082–83 (N.D. Cal. 2014) ("Courts in this district have adopted three diverging approaches for analyzing standing to pursue claims for nonpurchased products."). In determining whether products are substantially similar, "[c]ourts look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Figy*, 67 F. Supp. 3d at 1083.

Courts have previously found that diverse products bearing similar labels may be considered "substantially similar." For example, in *Morales v. Unilever U.S., Inc.*, No. CIV. 2:13-2213 WBS E, 2014 WL 1389613, at *1 (E.D. Cal. Apr. 9, 2014), the court—dealing with allegations pertaining to six shampoos and conditioners—found that the one unpurchased product was substantially similar to the purchased products because "the packaging of the [unpurchased product] is strikingly similar to the five products that plaintiffs purchased . . . ." *Id.* at *4. The court so found because the packaging contained the same labels, symbols, and product claims. *Id.* In *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012), the court explained: "That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors." *Id.* at *13. In *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010), the Plaintiff brought claims related to misleading labeling practices on "Windex, a multi-purpose cleaner designed for cleaning glass . . . and Shout, a stain remover." *Id.* at *1. The court deferred a finding about substantial similarity until the class certification stage but noted that "there is no brightline rule that different product lines cannot be covered by a single class." *Id.* at *3. Thus, diverse products that bear similar or uniform labels may be considered "substantially similar." The critical issue is whether the products are substantially similar with respect to the alleged mislabeling.

6

At the hearing on the first Motion to Dismiss, the Court informed Plaintiff: "[T]he level of specificity is important. I will be looking for that if I were to go beyond the [purchased] products. You are going to have to show why it is substantially similar. You may say that the caps are the same and the tubing are the same. . . . [T]here is going to have to be some specific allegations with regard to the other products too." Transcript at 26. In response, Plaintiff has named 24 products (dispensing with 15 additional products that were listed in the First Amended Complaint) and grouped them into four categories; the products in bold are those purchased by Plaintiff:

| | |
|---|---|
| **Epoxies**: (in similar plastic and/or aluminum tubes/pouches with resealable caps) | (1) **J-B Weld Twin Tube**[1] (2) KwikWeld Twin Tube (3) MarineWeld Twin Tube (4) WoodWeld Twin Tube |
| **Syringe Epoxies**: (in similar plastic tubes with plastic resealable caps, plastic syringes/EZMixer) | (5) KwikWeld Syringe (6) ClearWeld Syringe (7) Plastic Bonder Syringe (tan) (8) **PlasticWeld Syringe** (9) MarineWeld Syringe (10) Plastic Bonder Syringe (black) (11) WoodWeld Syringe (12) MinuteWeld Syringe |
| **Silicone Sealants, Gasket Makers & Threadlockers**: (in similar tubes/pouches with plastic resealable caps and nozzles) | (13) **Black Silicone** (14) Blue Silicone (15) Clear Silicone (16) Ultimate Black Silicone (17) Ultimate Grey Silicone (18) Hi-Temp Red Silicone (19) White Silicone (20) Water Pump & Thermostat Housing (21) Perma-Lock Blue Threadlocker (22) Perma-Lock Penetrating Threadlocker (23) Perma-Lock Red Threadlocker |
| **Specialty Product**: (with plastic bottle and a resealable cap) | (24) SuperWeld |

SAC at 1–2. Plaintiff alleges that "[a]ll the Products are substantially similar in that they all come in tubes or a plastic bottle and all have resealable caps, all of which are foreign-sourced and

7

comprise greater than 5% of the final wholesale value of the Products." *Id.* at 2. In addition, Plaintiff alleges that the products are "similarly packaged in blister packages with cardboard backing" and each package contains the message "Made in U.S.A." directly below an image of the American flag. *Id.* at 2–3.

Although Plaintiff's Complaint does not include further explanation of the similarities among the products in the *first* category (all of which are "Twin Tube" products), Plaintiff does allege the following similarities about the containers/packaging at issue with the other categories:

All Syringe Epoxies contain a prominent "call out" box on the product of their packages that advertises a "Resealable – No Waste Cap," *id.* at 7;

- All Threadlocker products are advertised as having "No Spill, Drip, Or Clog Cap[s]," *id.*;
- All Silicone Sealants and Gasket Makers come with plastic nozzles to assist in applying an "even, continuous ¼ inch bead of Silicone to one surface area," *id.* at 9; and
- "[A]lthough the SuperWeld Product is not included in the three groupings, it is still 'substantially similar' as it also bears the identical 'Made in U.S.A.' claims . . . the GAS [glues/adhesives/sealants] is housed in a foreign-sourced bottle, and the foreign-sourced parts are more than 5% of the wholesale value," Plaintiff's Opposition to Motion to Dismiss ("Opp.") at 10–11, Docket No. 46.

Pursuant to *Morales*, *Astiana*, and *Koh*, similarity in packaging or (mis)labeling can establish substantial similarity even among diverse products. Here, Plaintiff has alleged that all products are sold in cardboard-backed blister packaging that bears the label "Made in U.S.A." SAC at 2–3. Additionally, Plaintiff has described similarities among the containers (the tubes, caps, etc.) within each category (and those similarities are further supported by the images contained in Exhibit A to the Second Amended Complaint, *see* Docket No. 38-1), asserted that they are "foreign-sourced" (although specific countries of origin are not asserted), and alleged that the containers "comprise greater than 5% of the final wholesale value of the Products." In other words, Plaintiff has alleged that the 24 products "contain identical 'Made in U.S.A.'

8

misrepresentations, are similar to each other in kind, and are comprised of the same foreign-sourced components that render the 'Made in U.S.A.' representations false." Opp. at 13. Thus, with respect to the alleged mislabeling, the unpurchased products are substantially similar to those products purchased by Plaintiff.

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss under Rule 12(b)(1).

2. Standing to Seek Injunctive Relief

Defendant contends that Plaintiff lacks standing to seek injunctive relief because he "already believes that the packaging is not made in the United States. As such, he cannot be misled in the future into believing that it is made in the United States." MTD at 14. In addition, "he admits he would not purchase J-B Weld's products in the future." MTD at 1.

In the Ninth Circuit, "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase . . . ." *Kimberly-Clark*, 889 F.3d at 969. "[T]he threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969–70.

Plaintiff alleges that he "will purchase epoxy and other adhesive products in the future," and that he "would purchase such a product manufactured by Defendant if it were possible to determine prior to purchase that the product was 'substantially made, manufactured, or produced' in the U.S.A." SAC at 18. This is enough to demonstrate that Mr. Baum is currently "unable to rely on the product's advertising or labeling" and therefore "will not purchase the product although [he] would like to." *Kimberly-Clark*, 889 F.3d at 969–70. Thus, Plaintiff has standing to seek injunctive relief.

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss as it pertains to Plaintiff's standing to seek injunctive relief.

3. Failure to State a Claim

Defendant advances three arguments in support of its claim that Plaintiff fails to state a claim: (1) that the statute does not require that packaging (as opposed to the merchandise) be made

in the United States, (2) that a failure to come within the 5% safe-harbor provision does not constitute a *per se* violation of the statute, and (3) that, assuming no *per se* violation exists, Plaintiff has failed to adequately allege that J-B Weld's merchandise "has been entirely or substantially made, manufactured, or produced outside of the United States."

a. <u>Does the Statute Require Packaging be Made in the United States?</u>

As noted above, the statute at issue, Section 17533.7 of the California Business and Professions Code states:

> (a) It is unlawful for any person, firm, corporation, or association to sell or offer for sale in this state any merchandise on which merchandise or on its container there appears the words "Made in U.S.A.," "Made in America," "U.S.A.," or similar words if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.
>
> (b) This section shall not apply to merchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 5 percent of the final wholesale value of the manufactured product.

Cal. Bus. & Prof. Code § 17533.7.

Plaintiff alleges that the accused products violate the statute because "[e]ach *part* comprising the storage and delivery systems is made outside the USA, including, without limitation, the tubes and bottles that house the GAS (glues/adhesives/sealants), the caps that seal the GAS, and the nozzles and syringes that dispense the GAS, as well as all other non-GAS components." SAC at 13 (emphasis added). Defendant argues that Section 17533.7 applies only to "the 'merchandise' itself, and not its packaging," MTD at 7, and that "[b]y [the statute's] plain and unambiguous terms, only the parts of the *merchandise*, and not the *container*, must be substantially made in the United States," *id*. at 2 (emphasis added). Thus, because the GAS is made in the United States, no violation has occurred, irrespective of the container or packaging. Essentially, the dispute boils down to whether the bottles, tubes, and caps that encase the glues, adhesives, and sealants are part of the "merchandise," including "any article, unit, or part thereof," as that term is used in section 17533.7.

10

What constitutes "merchandise" (including "any article, unit, or part thereof") can be conceptualized as continuum. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 215 (2000) (Scalia, J.) ("[A] classic glass Coca–Cola bottle, for instance, may constitute packaging for those consumers who drink the Coke and then discard the bottle, but may constitute the product itself for those consumers who are bottle collectors, or part of the product itself for those consumers who buy Coke in the classic glass bottle, rather than a can, because they think it more stylish to drink from the former."). At one end of the continuum, for instance, might be the can in which paint is contained; the container serves no purpose other than to hold the content. It serves no integral function in the delivery or as to the effectiveness of the paint (other than perhaps its re-sealability with the help of a mallet). Such a container looks very little like part of the "merchandise." At the other end of the continuum might be soap-dispensing dish brush. Clearly, the brush—although it "contains" soap used to wash dishes—performs a key role in delivering and administering the soap.

Neither party has offered an established test of how and by what criteria merchandise and container are distinguished for purposes of § 17533.7. Defendant argues that the plain language of section 17533.7 imposes liability "only where the merchandise or its parts are entirely or substantially made abroad, but not where the containers for the merchandise are made abroad." MTD at 7. Plaintiff relies on *Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254 (2007), *as modified on denial of reh'g*, for the proposition that "when merchandise consists of two or more physical elements or pieces, section 17533.7 also applies to *any* distinct component of merchandise that is necessary for its proper use or operation." *See* Opp. at 7 (quoting *Benson*, 152 Cal. App. 4th at 1273); *see also Benson*, 152 Cal. App. 4th at 1272–73 (defining the terms article, unit, and part). Both parties also discuss origin-claim policies promulgated by the Federal Trade Commission, which state that "[a] product that is all or virtually all made in the United States will ordinarily be one in which *all significant parts* and processing that go into the product are of U.S. origin." Complying with the MADE IN USA STANDARD, 62 Fed.Reg. 63,756 (December 2, 1997) (emphasis added); *see also See* Opp. at 7; Defendant's Reply ("Reply") at 3–4, Docket No. 49. However, none of these authorities makes clear whether the caps, tubes, and bottles that

11

contain J-B Welds products should be counted as part of the "merchandise." The parties cite no case law that illuminates with any specificity the applicable legal standard in determine what constitutes "merchandise."

Thus, where to draw the line along the continuum is not well defined. However that line is defined, there is a likelihood that whether the bottles, tubes, and caps at issue here constitute "merchandise" or "containers" is not something that can be determined at the 12(b)(6) stage.; that determination involves the application of the law to the particular facts of the case. Here, the container and applicators of the GAS arguably play a functional role in the delivery and effectiveness of the adhesives; whether that function is sufficient to treat the containers and applications as part of the "merchandise" would appear to constitute a mixed question of law and fact. *See, S.E.C. v. Phan,* 500 F.3d 895, 908–909 (9th Cir. 2007) (recognizing that mixed questions of law and fact are typically left for the jury); *Delange v. Dutra Constr. Co., Inc.,* 183 F.3d 916, 919 (9th Cir. 1999) (same); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 95 F.3d 1422, 1428–29 (9th Cir. 1996) (same); *see also Pullman–Standard v. Swint,* 456 U.S. 273, 289 n.19 (1982) (defining a mixed question of law and fact as one "in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated"). Unless the facts are so clear that only one inference may reasonably be drawn, mixed questions of law and fact are generally for the trier of fact. *See, e.g.*, *Hana Fin., Inc. v. Hana Bank,* 574 U.S. 418, 135 S.Ct. 907, 911–12 (2015).

        b.    <u>Does a Failure to Come Within the 5% Safe-Harbor Provision Constitute a *Per Se* Violation of the Statute?</u>

Defendant also argues that while "the California legislature established a 5% safe harbor that *per se* exempts certain advertising from the requirements of section 17533.7" that exemption "does not mean that selling products with greater than 5% foreign content is an *automatic* violation of Section 17533.7." MTD at 9. Instead, Defendant contends that a "plaintiff must still allege, and ultimately prove, that the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States." *Id.* at 10.

12

Assuming, without deciding the issue, that having foreign content in excess of the 5% safe-harbor level does *not* constitute a *per se* violation, the Court examines whether Plaintiff has adequately alleged that J-B Weld's merchandise "has been entirely or substantially made, manufactured, or produced outside of the United States."

In the Second Amended Complaint, Plaintiff alleges that the containers "comprise greater than 5% of the final wholesale value of the Products." SAC at 2; *see also id.* at 13 ("more than 5% of the final wholesale value of each of the Products is made, manufactured, or produced outside the United States"). Plaintiff further alleges that "the Products contain more than a 'de minimis, or negligible,' amount of foreign content." *Id.* at 13. In addition, lacking precise information about the wholesale value of bottles, tubes, and caps associated with the accused products, Plaintiff attempts to reverse-engineer some of those values. For example, Plaintiff compares one KwikWeld Twin Tube Product sold in 1-ounce tubes at $3.99 per ounce to the same product in the larger "Pro Size," which costs $1.99 per ounce and asserts that—because J-B Weld is not likely to be selling the GAS at a loss per ounce—it is reasonable to infer that the cost per ounce is less than $1.99, and therefore that the "cost input of the 1 ounce of GAS comprises less than $1.99 of the $3.99 price of each tube [in the 1-ounce version] and thus the remaining $2.00 of that retail price is attributable to the value or cost input of the storage and delivery systems." SAC at 13–14. Similar analysis is conducted for ClearWeld Syringe Product. *See* SAC at 14–15. Although fiercely disputed by Defendant, these back-of-the-envelope calculations suggest that the bottles, tubes, and caps in question could comprise as much as 50% of the wholesale value of the accused products. Even in the absence of a *per se* rule, it would appear to be a mixed question of law and fact whether the merchandise or a part thereof is "substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7.

As to the specificity of Plaintiff's allegations, the Ninth Circuit "has held that the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citing *Wool v. Tandem Computers Inc.,* 818 F.2d 1433,

1439 (9th Cir.1987)). "However, this exception does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Id.* Although retail pricing and wholesale pricing differ, Plaintiff has relied on the facts available to him and made reasonable inferences that permit him allege with meaningful specificity the information relevant to a statutory violation. Drawing all inferences in Plaintiff's favor, as the Court must in adjudicating a motion to dismiss, he has adequately alleged a violation of the statute.

Thus, the Court **DENIES** Defendant's Motion to Dismiss under Rule 12(b)(6).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss the Second Amended Complaint.

This order disposes of Docket No. 43.

**IT IS SO ORDERED**.

Dated: December 16, 2019

_____
EDWARD M. CHEN
United States District Judge